ROBERT BRIAN BLACK 7659
Civil Beat Law Center for the Public Interest
700 Bishop Street, Suite 1701
Honolulu, Hawai`i  96813
brian@civilbeatlawcenter.org
Telephone:  (808) 531-4000
Facsimile:  (808) 380-3580

Attorney for Civil Beat Law Center
    for the Public Interest

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| IN RE:  CIVIL BEAT LAW CENTER FOR THE PUBLIC INTEREST,<br><br>Objector. | MISC. NO. 22-39<br>[CR NO. 21-00142 LEK]<br><br>OBJECTION TO JOINT MOTION FOR PROTECTIVE ORDER RE DISCOVERY [DKT. 14]; and CERTIFICATE OF SERVICE |

**OBJECTION TO JOINT MOTION FOR PROTECTIVE ORDER
RE DISCOVERY [DKT. 14]**

Pursuant to the public right of access guaranteed by the First Amendment of the United States Constitution and the common law, Civil Beat Law Center for the Public Interest (Law Center) objects to a portion of the proposed protective order filed by the United States [Dkt. 14] in *United States v. Leong*, Cr. No. 21-00142 LEK.  Paragraph 10 of the proposed order would permit the parties to file any discovery materials under seal without first providing the public with the opportunity to object or this Court with the opportunity to enter specific findings whether sealing is justified at the time of filing.

The Law Center does not object to the confidential *discovery* aspects of the proposed protective order and is not—by way of its objection to the protective order—asking the Court to publicly disclose discovery materials in this case. Paragraph 10, however, provides blanket authority for sealing court records without the parties or the Court first satisfying the procedural and substantive safeguards required by the Ninth Circuit. The parties should be required to follow the process provided by Local Rule 5.2. LR 5.2(b) ("A stipulation or blanket protective order that allows a party to designate matters to be filed under seal will not suffice to allow the filing of the matter under seal.").

The agreement of the parties in this matter is not sufficient. As the Ninth Circuit has observed:

> The procedural and substantive safeguards described in *Oregonian* and *Brooklier* are not mere punctilios, to be observed when convenient. They provide the essential, indeed only, means by which the public's voice can be heard. All too often, parties to the litigation are either indifferent or antipathetic to disclosure requests. This is to be expected: it is not their charge to represent the rights of others.

*Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 951 (9th Cir. 1998).

The Law Center respectfully requests that the Court enter a protective order that requires the parties to file a properly supported motion to seal, when

necessary, if the parties believe that discovery materials to be filed with the Court should be sealed.¹

I.      **FACTUAL BACKGROUND**

Pursuant to Fed. R. Crim. P. 16(d), the Government seeks a protective order for all discovery in the case. Dkt. 14 at PageID#:61. The proposed order would permit the parties to "file the discovery material under seal" before the Court has an opportunity to make a determination whether the material should be sealed. *Id.* ¶ 10 at PageID#:63. The proposed protective order does not explain what compelling interest would be served by sealing such information; does not articulate how disclosure of the information would harm the compelling interest; and does not address possible alternatives to sealing the documents.

II.     **THE PUBLIC HAS A PRESUMED RIGHT OF ACCESS TO RECORDS OF CRIMINAL PROCEEDINGS.**

The constitutional right of public access to criminal proceedings is among those rights that, "while not unambiguously enumerated in the very terms of the

---

¹ For example, instead of paragraph 10 of the Government's proposed order, a provision comparable to the Court's form protective order for civil cases, paragraph 6:

> No party or non-party shall file or submit for filing as part of the court record any documents under seal without first obtaining leave of court. Notwithstanding any agreement among the parties, the party seeking to file a paper under seal bears the burden of overcoming the presumption in favor of public access to papers filed in court.

[First] Amendment, are nonetheless necessary to the enjoyment of other First Amendment rights." *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 604 (1982). "A major purpose of that Amendment was to protect the free discussion of governmental affairs." *Id.*; *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980) (plurality opinion) (the freedoms in the First Amendment "share a common core purpose of assuring freedom of communication on matters relating to the functioning of government"). Thus, to the extent that the constitution guarantees a qualified right of public access, "it is to ensure that this constitutionally protected 'discussion of governmental affairs' is an informed one." *Globe Newspaper*, 457 U.S. at 605; *Richmond Newspapers*, 448 U.S. at 587 (Brennan, J., concurring) ("Implicit in this structural role is not only the principle that debate on public issues should be uninhibited, robust, and wide-open, but also the antecedent assumption that valuable public debate—as well as other civic behavior—must be informed.").

"By offering such protection, the First Amendment serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper*, 457 U.S. at 604. "[T]he public has an intense need and a deserved right to know about the administration of justice in general; about the prosecution of local crimes in particular; about the conduct of the judge, the prosecutor, defense counsel, police officers, other public

4

servants, and all the actors in the judicial arena; and about the trial itself." *Richmond Newspapers*, 448 U.S. at 604 (Blackmun, J., concurring). "[Openness] gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Id.* at 569; *accord Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 508 (1984) [*Press-Enter. I*] ("[T]he sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known.").

"A result considered untoward may undermine public confidence, and where the trial has been concealed from public view an unexpected outcome can cause a reaction that the system at best has failed and at worst has been corrupted." *Richmond Newspapers*, 448 U.S. at 571 (plurality); *Globe Newspaper*, 457 U.S. at 606 ("[P]ublic access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process."); *Press-Enter. I*, 464 U.S. at 508 ("Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."). "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572 (plurality opinion);.

The same First Amendment standards for closing courtroom proceedings apply to sealing documents for criminal pretrial proceedings. *E.g.*, *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1145 (9th Cir. 1983). As the Ninth Circuit has observed:

> There is no reason to distinguish between pretrial proceedings and the documents filed in regard to them. Indeed, the two principal justifications for the first amendment right of access to criminal proceedings apply, in general, to pretrial documents. Those two justifications are: "first, the criminal trial historically has been open to the press and general public," and "second, the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole." There can be little dispute that the press and public have historically had a common law right of access to most pretrial documents — though not to some, such as transcripts of grand jury proceedings. . . . We thus find that the public and press have a first amendment right of access to pretrial documents in general.

*Id.* (citations omitted).

To preserve the societal values reflected in the First Amendment, the U.S. Supreme Court held that "[c]losed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *Press-Enter. I*, 464 U.S. at 509. "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 510; *accord Globe Newspaper*, 457 U.S. at 606-07.

Similarly, with a few exceptions, the public also has a presumed common law right of access to records of criminal proceedings. *United States v. Bus. of the Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192-95 (9th Cir. 2011) [*Custer Battlefield*] ("a strong presumption in favor of access is the starting point.").

## III. THE PRESUMPTION OF ACCESS IS PROTECTED BY PROCEDURAL AND SUBSTANTIVE PREREQUISITES TO SEALING.

To preserve the constitutional and common law presumptions of public access to judicial records, procedural and substantive requirements must be met before records are sealed. *E.g.*, *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1466 (9th Cir. 1990); *Custer Battlefield*, 658 F.3d at 1194-95. For the constitutional right, "[i]t is the burden of the party seeking closure . . . to present facts supporting closure and to demonstrate that available alternatives will not protect his rights." *Oregonian Publ'g*, 920 F.2d at 1467. Thus, a proponent of sealing must prove that: "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 949 (9th Cir. 1998). The findings may not be based on "conclusory assertions." *Id.*

For the common law analysis, the "party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by . . . articulating compelling reasons . . . that outweigh the general history of access and the public policies favoring disclosure." *Custer Battlefield*, 658 F.3d at 1194-95. A court presented with a motion to seal must balance the competing interests and "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1195. "[T]he court may not restrict access to the documents without articulating both a compelling reason and a factual basis for its ruling." *Id.* at 1196.

IV. **THE PROPOSED PROTECTIVE ORDER DOES NOT COMPLY WITH THE PROCEDURAL AND SUBSTANTIVE SAFEGUARDS FOR PUBLIC ACCESS TO JUDICIAL RECORDS.**

A blanket protective order for discovery does not justify sealing documents filed with the court. *E.g.*, *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1134-36 (9th Cir. 2003). As the *Foltz* court explained:

> When discovery material is filed with the court, however, its status changes. If the documents are not among those which have "traditionally been kept secret for important policy reasons," then "the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.)," apply.

*Id.* at 1134 (citations omitted). If the parties use intercepted communications, for example, in bail, suppression, or dismissal proceedings or at trial, the traditional constitutional standards of public access apply, not the "good cause" discovery

8

standard. Thus, while the Court may regulate the exchange of discovery for "good cause" under Fed. R. Crim. P. 16(d), that does not change the standard for sealing court records filed in this proceeding.

A motion for protective order simply is not the proper mechanism for this Court to authorize the parties to file documents under seal without further justification. There is no reason for this case to deviate from the District's Local Rules for sealing.

## CONCLUSION

Based on the foregoing, the Law Center respectfully requests that the Court enter a protective order that requires the parties to file a properly supported motion to seal, when necessary, if the parties believe that discovery materials to be filed with the Court should be sealed.

DATED: Honolulu, Hawai`i, January 20, 2022

/s/ Robert Brian Black
ROBERT BRIAN BLACK
Attorney for Civil Beat Law Center
  for the Public Interest